UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------X

PATRICIA SANTORO,

              Plaintiff,          **MEMORANDUM & ORDER**

   - against -            No. 1:21-cv-2044(KAM)

COMMISSIONER OF SOCIAL SECURITY,

              Defendant.

-----------------------------------X

**KIYO A. MATSUMOTO, United States District Judge:**

    Plaintiff Patricia Santoro appeals the final decision of Defendant Commissioner of Social Security denying her Supplemental Security Income under the Social Security Act, 42 U.S.C. §§ 301-1397mm.  (Compl., ECF No. 1.)  The parties have cross-moved for judgment on the pleadings.[1]  (Mem. Law Supp. Pl.'s Mot. J. Pleadings ("Mem."), ECF No. 12; Mem. Law Supp. Def.'s Cross-Mot. J. Pleadings & Opp'n Pl.'s Mot. J. Pleadings ("Opp'n"), ECF No. 13-1.)  For the reasons below, the Court grants Santoro's motion, denies the Commissioner's motion, and remands this case for further proceedings.

---

[1] Social security appeals are generally resolved on motions for judgment on the pleadings.  This is because judicial review of social security decisions is limited to "the pleadings and transcript of the record," *see* 42 U.S.C. § 405(g); *Kercado ex rel. J.T. v. Astrue*, No. 1:08-cv-478(GWG), 2008 WL 5093381, at *2 (S.D.N.Y. Dec. 3, 2008), and the Commissioner's "answer may be limited to a certified copy of the administrative record," *see* Fed. R. Civ. P. Suppl. Social Security R. 4(b), as it was here, (*see* Admin. Tr., ECF No. 10).

## BACKGROUND

The parties have filed a stipulation of relevant facts, which the Court has reviewed and incorporates by reference. (*See* Joint Stip. Relevant Facts from Certified Admin. Rec., ECF No. 11.)  The parties note in their stipulation that Santoro "is only contesting the ALJ's findings as to her mental impairments and limitations, not physical ones." (*Id.* 4 n.2.)  Accordingly, the Court limits its recitation of the facts to those relevant to Santoro's mental health.

## I.   Santoro's Application for Supplemental Security Income

Santoro applied for Supplemental Security Income on February 14, 2019, at age 36.  (R.69.)[2]  She explained that she had been employed in food preparation but stopped working on January 7, 2019, due to post-traumatic stress disorder, anxiety, panic attacks, depression, irritable bowel syndrome, migraines, Hashimoto's disease, thyroid problems, and body aches.  (R.232–33.)  The Commissioner found Santoro "not disabled" and thus denied the claim on May 22, 2019.  (R.96.)  Santoro sought reconsideration, but the Commissioner affirmed the denial on October 22, 2019.  (R.104.)  Santoro then requested a hearing before an Administrative Law Judge ("ALJ"),[3] which occurred on

---

[2] The Court cites to the Bates-stamped Administrative Transcript, (ECF No. 10), as (R.___.).

[3] The Social Security Act directs the Commissioner to make findings of fact and determine the rights of anyone who submits a claim for Supplemental Security Income.  42 U.S.C. § 1383(c)(1)(A).  The Commissioner has delegated

April 20, 2020.  (R.47–68, 136.)  Santoro submitted medical records that the ALJ received into evidence at the hearing. (R.52.)

## II.  Medical Records

### A.    Treatment Notes

On December 17, 2018, Santoro went to the emergency room after suffering a panic attack.  (R.331–39.)  Santoro saw psychiatrist Honey Win at Elmhurst Hospital in Queens for a psychiatric evaluation on January 14, 2019.  (R.374–80.)  Dr. Win noted Santoro presented to the emergency room "due to overwhelming anxiety and disabling depression for [the] last 3–4 months," (R.379), and had a history of anxiety disorder, self-harm, mood disorder, and trauma disorder, (R.375).  Dr. Win diagnosed Santoro with major depressive disorder (with psychosis), post-traumatic stress disorder, and "Panic disorder vs Generalized Anxiety Disorder."  (R.379)  The next day, Santoro saw Dr. Win again at Elmhurst.  (R.385.)  Dr. Win offered Santoro voluntary admission, but Santoro declined. (*Id.*)  Dr. Win found that an outpatient setting was appropriate, and she discharged Santoro with a diagnosis of post-traumatic stress disorder, a moderate single current episode of major depressive disorder, and generalized anxiety disorder.  (R.386.)

---

that responsibility to ALJs.  *See* 20 C.F.R. §§ 416.1444–416.1461.  If an ALJ issues an adverse decision, the claimant may appeal it to the Social Security Appeals Council.  20 C.F.R. §§ 416.1467–416.1482.

On January 24, 2019, Santoro saw psychiatrist Catalina Nino at Elmhurst, presenting with symptoms of anxiety, shortness of breath, disassociation, chest tightness, tachypnea, and numbness.  (R.397.)  Santoro reported that "[h]er depression and anxiety [had] impaired her functioning and [that she had] taken a leave [from] work."  (*Id.*)  Dr. Nino noted "[p]oor" response to treatment and that Santoro was experiencing "continuous symptoms."  (R.398.)  Santoro visited Dr. Nino again on February 25, 2019.  (R.594)  Dr. Nino summarized Santoro's symptoms and functional deficits as "depressive and anxiety symptoms, possible GAD at baseline and panic d/o as well as PTSD like symptoms."  (*Id.*)  Dr. Nino recommended continuing the current frequency of treatment services "to prevent relapse and maintain or improve level of functioning."  (R.595.)  Santoro visited Dr. Nino a third time on March 20, 2019.  (R.404.) Dr. Nino noted that Santoro's therapy sessions were going well and that she was taking her medications as prescribed.  (*Id.*) Dr. Nino noted a "[p]artial" response to treatment and continuous symptoms.  (*Id.*)  Dr. Nino recommended maintaining the same levels of treatment services.  (*Id.*)

On April 24, 2019, however, Santoro visited psychiatrist Melanie Chan at Elmhurst, explaining that she did not think her medications were controlling her anxiety.  (R.407.)  Dr. Chan noted that Santoro was in "partial remission."  (R.408.)

4

Santoro visited Dr. Chan again on June 26, 2019, reporting "some good days and some bad days" as well as "anxiety triggered by issues with her children." (R.734.) Santoro further reported that she suffered "depression . . . caused by her anxiety, which prevent[ed] her from going out." (*Id.*) Dr. Chan again described Santoro as in "partial remission." (R.735.) On July 31, 2019, Santoro visited Dr. Chan and reported that she "ha[d] not been feeling depressed." (R.757.) Dr. Chan once again described Santoro as "partial remission." (R.758.)

**B. Examining Consultant**

Internist Daniel Schwartz conducted a consultative examination of Santoro on May 14, 2019. (R.417–21.) Santoro complained of irritable bowel syndrome and a history of Hashimoto's disease, endometriosis, migraines, post-traumatic stress disorder, anxiety disorder, panic attacks, and body aches. (R.417.) She reported that she saw a psychiatrist once per month, saw a therapist once per week, and was taking medication. (*Id.*) She further reported that she performed routine household chores with her boyfriend's help. (R.418.)

Dr. Schwartz conducted a physical examination but not a mental examination. (*See* R.418–20.) He wrote that he would "defer to Psychiatry with regard to [Santoro's] history of posttraumatic stress disorder, anxiety, and panic attacks." (R.420.) He concluded that Santoro could "expect scheduled

interruptions with her history of migraine headaches" and that
"[o]n the basis of the physical examination," Santoro had "mild
limitations in [her] ability to sit, stand, climb, push, pull,
carry, or lift heavy objects."  (*Id.*)

### C.    Non-Examining Consultants

The New York State Office of Temporary and Disability
Assistance ("OTDA") determined on May 21, 2019, that Santoro had
"mild" limitations in her ability to understand, remember, and
apply information and her ability to interact with others.[4]
(R.75, 80.)  It also found "moderate" limitations regarding
Santoro's ability to concentrate, persist, or maintain pace and
her ability to adapt or manage herself.  (R.75.)  OTDA reached
the same conclusions on October 4, 2019, after Santoro sought
reconsideration of her claim.  (R.88–89.)

OTDA provided a determination regarding Santoro's physical
symptoms on May 20, 2019, finding Santoro lacked a severe
physical impairment.  (R.74.)  It reached the same conclusion on
reconsideration.  (R.87–88.)

### D.    Attempts to Secure Medical Opinions

OTDA twice unsuccessfully attempted to obtain medical
opinions from "Jesse Elias, MD" at Elmhurst.  (R.422–29.)

---

[4] The Social Security Administration works with state governments to maintain
disability claims processing systems.  20 C.F.R. § 416.1003.  State agencies
generally make initial "determinations of disability with respect to all
persons in the State."  20 C.F.R. § 416.1013.  OTDA makes such determinations
in New York.  *Genier v. Astrue*, 606 F.3d 46, 47 (2d Cir. 2010).

Nothing in the record suggests Elias had a medical degree. Rather, Elias appears in Santoro's medical records as "Jesse Elias, LMSW," (*see, e.g.*, R.537), and the ALJ referred to her as Santoro's "social worker," (*see* R.20).  OTDA also twice unsuccessfully attempted to obtain medical opinions from "Glendale Family Medicine" and "Sui-Ling Ma MD" regarding care provided before Santoro's December 17, 2018, visit to the emergency room.  (R.355–64.)

## III. Hearing Testimony

### A.   Santoro's Testimony

Santoro appeared with counsel before ALJ Gloria Pellegrino at the administrative hearing on April 20, 2020.  (R.49.)  Due to the COVID-19 pandemic, the hearing was held by phone.  (*Id.*)  The ALJ admitted Santoro's medical records into evidence and questioned her under oath.  (R.52–53.)

Santoro testified that she stopped working because she had "really bad anxiety attacks to the point where [she was] hyperventilating and going to the emergency room" as well as migraine problems.  (R.55.)  She further testified that she would "shake constantly" and started having "memory problems." (*Id.*)  Eventually, her boss told her not to return to work until she got medical clearance.  (R.56.)  Santoro explained that symptoms preventing her from returning to work included shaking, nausea, headaches, memory loss, and "blacking out."  (R.56.)

She described "blacking out" as when she would get "overwhelmed," "lose track of time," and sometimes not "come back." (R.57.) She elaborated that she would get overwhelmed in "crowded situation[s]" and that certain "triggers" would make her start shaking, pacing, or crying. (*Id.*)

Santoro's attorney noted for the record that the Social Security Administration never sent Santoro out for a psychiatric evaluation. (R.60.) The attorney told the ALJ that he and his client would "certainly be open to having [Santoro] see a consultant as a psychiatrist" for "a specific assessment of [Santoro's] psychiatric impairments." (R.60–61.) The ALJ responded that there are "[u]sually . . . enough psychiatric records in there [that] they don't necessarily send her out for an exam." (R.61.) She further explained that the Social Security Administration was "not scheduling any CEs due to the pandemic" and "they [didn't] know when [they would] . . . start up again." (*Id.*) The ALJ explained that they were "not doing that unless [it was] absolutely necessary" to the point that the ALJ could not otherwise "issue a decision." (*Id.*) The ALJ acknowledged that Santoro had "a lot of psychiatric records in this case" but said she did not think she had to order a consultative exam based on what she reviewed. (R.61–62.) She offered to "go back and look" at any exhibits already in the file at the attorney's request but suggested that "after [she]

8

review[ed] this file," she likely would not have to.  (R.62.)
She added that "[t]hat's the reason [she] also didn't request [a
medical expert] at the hearing."  (*Id.*)

**B.   Vocational Expert's Testimony**

The ALJ next heard testimony from a vocational expert.
(*Id.*); *see* 20 C.F.R. § 416.960(a)(2) (explaining that the
Commissioner may "use the services of a vocational expert" to
determine whether the claimant can do "past relevant work" or
"other work . . . exist[ing] in significant numbers in the
national economy").  The vocational expert opined that Santoro's
work history brought her under the title "food and beverage
checker," a light, semi-skilled job.  (R.65.)

The ALJ asked the vocational expert to consider a
hypothetical worker of Santoro's age, education, and work
background capable of doing "light" work.  (*Id.*)  She explained
that the hypothetical worker would be limited to performing
simple, routine tasks and could have only occasional contact
with the public.  (*Id.*)  The vocational expert opined that the
worker would be unable to do Santoro's past work as a food
preparation employee but could do other work in the national
economy, namely that of a laundry bagger, bakery racker, or lamp
assembler.  (R.65–66.)  He further opined that employers of such
workers would tolerate a maximum of fifteen percent of "time

9

off-task during the work day" and one day per month of absence.
(R.66–67.)

**IV.  The ALJ's Decision**

The ALJ issued a written decision on May 20, 2020,
concluding that Santoro was not disabled since February 14,
2019, and thus not entitled to Supplemental Security Income.
(R.15–25.)  The ALJ found that Santoro had not engaged in
substantial gainful activity since she applied and that she had
severe medically determinable impairments that significantly
limited her ability to perform basic work activities, including
irritable bowel syndrome, migraines, Hashimoto's disease, post-
traumatic stress disorder, anxiety, panic attacks, and
depression.  (R.17.)  The ALJ also found that Santoro did not
have an impairment or combination of impairments that would
automatically qualify her as disabled under the applicable
regulations.  (*Id.*); *see* 20 C.F.R. § 416.925.  As to Santoro's
mental impairments, the ALJ found "moderate" limitations in all
relevant functional areas and insufficient evidence of a
"serious and persistent" disorder or "marginal adjustment."
(R.18–19.); *see* 20 C.F.R. § 416.920a; 20 C.F.R. Part 404,
Subpart P, App'x 1, Listings 12.04, 12.06, 12.15.

Next, the ALJ found that Santoro had the residual
functional capacity ("RFC") to do "light work" with the same
limitations as the hypothetical worker she posed in her

10

questions to the vocational expert.  (R.19.)  In making that
finding, the ALJ relied on Santoro's own testimony and the
medical opinions of Dr. Schwartz and OTDA.  (R.21–22.)  She
deemed Dr. Schwartz's opinion "generally persuasive" because it
was "consistent with the medical record, which show[ed] a level
of physical limitation that would not prevent [Santoro] from
performing light work."  (R.21.)  She deemed OTDA's psychiatric
opinions "somewhat persuasive" because "the additional
documentation available at the hearing level suggest[ed]
moderate limitations" in all mental health categories.  (R.22.)
Finally, she deemed OTDA's physical opinions "not persuasive"
because the evidence "establish[ed] that [Santoro did] have
certain significant limitations."  (*Id.*)

    The ALJ found that Santoro had "overall moderate
psychiatric limitations," noting her extensive treatment records
from Elmhurst Hospital.  (R.23.)  The ALJ acknowledged that the
records "reflect[ed] regular therapy and treatment sessions for
emotional problems and alleged panic attacks."  (*Id.*)  She
ultimately concluded that Santoro's "mental limitation . . .
would not prevent her from performing the requirements of
unskilled work," however.  (*Id.*)  In support, she pointed to
statements in Santoro's treatment notes suggesting Santoro
"responded well to treatment and medication," "remained stable
throughout treatment," was "in partial remission," and exhibited

11

"ongoing stability."  (*Id.*)  As to Santoro's subjective

testimony, the ALJ noted "inconsistencies" in Santoro's

reporting and cited treatment notes indicating Santoro was

unable to identify a trigger for her panic attacks.  (*Id.*)

Based on this RFC finding, the ALJ found Santoro unable to

perform her past work as a food preparation employee because

such work is semi-skilled and Santoro's impairments limited her

to unskilled work.  (*Id.*)  The ALJ ultimately concluded that

Santoro was not disabled, however, because Santoro's RFC still

enabled her to work as a laundry bagger, bakery racker, or lamp

assembler and such jobs "exist[ed] in significant numbers in the

national economy."  (R.24-25.)

The Appeals Council on March 31, 2021, found no basis to

change the ALJ's ruling, thus rendering it the Commissioner's

final decision.  (R.1-3); *see* 20 C.F.R. § 416.1481.  Santoro

timely brought this action against the Commissioner for judicial

review of that decision on April 15, 2021.  (*See* Compl.)

## LEGAL STANDARD

To receive Supplemental Security Income, a claimant must be

"disabled" under the Social Security Act.  *See* 42 U.S.C.

§ 1382(a).  The claimant is "disabled" when he or she is unable

to "engage in any substantial gainful activity" due to a

"medically determinable physical or mental impairment" that

could be expected to result in death or has lasted for a

continuous period of at least twelve months.  42 U.S.C.
§ 1382c(a)(3)(A).[5]  The impairment must be of "such severity"
that the claimant cannot do his or her previous work or any
other substantial gainful work that "exists in the national
economy."  42 U.S.C. § 1382c(a)(3)(B).  In determining whether
the claimant is disabled, the Commissioner must consider (1) the
objective medical facts in the record; (2) diagnoses or medical
opinions based on those facts; (3) subjective evidence of pain
or disability; and (4) the claimant's education, age, and work
experience.  *Duran v. Comm'r of Soc. Sec.*, 618 F. Supp. 3d 94,
97 (E.D.N.Y. 2022).

The Commissioner's regulations prescribe a five-step
process for determining whether a claimant is disabled.  *See*
20 C.F.R. § 416.920.  The Commissioner determines whether
(1) the claimant is working, (2) the claimant has a "severe
impairment," (3) the impairment is one that requires a
determination of disability under the applicable regulations,
(4) the claimant can continue his or her prior work, and
(5) other work exists in the national economy that the claimant
can perform.  *Burgess v. Astrue*, 537 F.3d 117, 120 (2d Cir.

---

[5] The provisions of the Social Security Act governing disability insurance
benefits and Supplemental Security Income use the same standards to determine
disability.  *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).  Thus, cases
addressing disability as to one form of benefits are equally instructive as
to the other.  *Rodriguez v. Saul*, No. 1:19-cv-10002(JGK)(OTW), 2021 WL
1845063, at *10 n.3 (S.D.N.Y. Mar. 2, 2021), *R&R adopted by* 2021 WL 1335907
(S.D.N.Y. Apr. 9, 2021).

2008).  To determine whether the claimant can do prior work or other work at the fourth and fifth steps, the Commissioner compares such work against the claimant's RFC.  20 C.F.R. § 416.920(a)(4)(iv)-(v).  RFC is "the most [the claimant] can still do despite [his or her] limitations."  20 C.F.R. § 416.945(a)(1).

The claimant has the burden of proof at the first four steps, and the Commissioner has the burden of proof at the fifth.  *Colgan v. Kijakazi*, 22 F.4th 353, 358 (2d Cir. 2022).  Because a hearing on disability benefits is an inquisitorial rather than adversarial proceeding, however, the ALJ has an affirmative obligation to develop the administrative record.  *Hernandez v. Comm'r of Soc. Sec.*, No. 1:21-cv-5405(WFK), 2023 WL 4209622, at *3 (E.D.N.Y. June 27, 2023)

If the Commissioner denies benefits, the claimant may seek judicial review of that decision by filing a civil action in a federal district court.  42 U.S.C. §§ 405(g) (governing judicial review of disability insurance benefits decisions), 1383(c)(3) (incorporating § 405(g) as to Supplemental Security Income).  The court may set aside the Commissioner's decision only if the Commissioner's factual findings are not supported by substantial evidence or the Commissioner's decision was based on a legal error.  *Duran*, 618 F. Supp. 3d at 98.  "Substantial" evidence means enough to reasonably support the Commissioner's decision.

14

*Id.*  Inquiry into "legal error" involves considering whether the claimant had a "full hearing under the [Commissioner's] regulations and in accordance with the beneficent purposes of the [Social Security] Act." *Id.* (quoting *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009)).

After reviewing the Commissioner's decision, the court may remand the case to the Commissioner for further proceedings. 42 U.S.C. § 405(g).  Remand is appropriate where there are gaps in the administrative record or where the ALJ applied the wrong legal standard. *Oteze Fowlkes v. Adamec*, 432 F.3d 90, 98 (2d Cir. 2005).  Remand is especially appropriate if more findings would clarify the rationale for the ALJ's decision. *Duran*, 618 F. Supp. 3d at 99.  If the record shows persuasive proof of disability, however, the court may simply reverse the ALJ's decision and remand the case with an instruction to calculate and pay benefits.  *Id.*

## DISCUSSION

Santoro challenges the ALJ's findings concerning her mental RFC. (Mem. 8.)  Specifically, Santoro argues that the administrative record was incomplete because it lacked a psychiatric functional assessment by a treating doctor or consultative examiner. (*Id.* 11.)  The Commissioner responds that the ALJ was not required to support her RFC finding with a

medical opinion because the record already had enough evidence for the ALJ to have found Santoro not disabled.  (Opp'n 11–12.)

## I.    The Role of Medical Opinions in RFC Findings

An RFC finding is a medical determination.  *Valderrama v. Comm'r of Soc. Sec.*, 379 F. Supp. 3d 141, 148 (E.D.N.Y. 2019).  Because an ALJ is a layperson and not a medical doctor, the ALJ may not interpret raw medical data when determining a social security claimant's RFC.  *Figaro v. Comm'r of Soc. Sec.*, No. 1:21-cv-4481(PKC), 2022 WL 4647102, at *5 (E.D.N.Y. Sept. 30, 2022).  An ALJ who makes an RFC finding without a supporting expert medical opinion "improperly substitute[s] his [or her] own opinion for that of a physician" and thus "commit[s] legal error."  *Hilsdorf v. Comm'r of Soc. Sec.*, 724 F. Supp. 2d 330, 347 (E.D.N.Y. 2010).

Accordingly, the ALJ's RFC determination must be supported by a medical opinion in the record at that time.  *Schmidt v. Comm'r of Soc. Sec.*, No. 1:20-cv-3594(KAM), 2022 WL 1540054, at *4 (E.D.N.Y. May 16, 2022).  The applicable regulations require the Commissioner to "make every reasonable effort" to obtain a medical opinion from the claimant's treating source.  *See* 20 C.F.R. § 416.912(b)(1).  "Every reasonable effort" means an initial request and then a follow-up request if necessary.  *Id.*

Until recently, regulations required the ALJ to presumptively assign the treating source opinion "controlling

16

weight." *See* 20 C.F.R. § 416.927(c)(2).  Even under this "treating source rule" (sometimes called the "treating physician rule"), an ALJ's failure to request a medical source opinion did not necessarily require remand.  Rather, as the Second Circuit explained in *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 34 (2d Cir. 2013), the need for a remand depended on whether the "record contain[ed] sufficient evidence from which an ALJ [could] assess the petitioner's [RFC]."

The treating source rule does not apply to Santoro's February 14, 2019, claim, however, because newer regulations eliminated the treating source rule for claims filed on or after March 27, 2017.  *See* 20 C.F.R. § 416.920c.  For claims subject to the new regulations, the ALJ must assess *all* medical opinions for their "persuasiveness" based on the same standards with no presumption that one carries more weight than another. 20 C.F.R. § 416.920c(a).  Despite the treating source rule's demise, the Court agrees with several courts in the Second Circuit concluding that "the principle espoused by *Tankisi* still applies" and that remand remains necessary when an ALJ's failure to obtain a treating source opinion left the ALJ unable to reach "an informed decision based on substantial evidence."  *See Russ v. Comm'r of Soc. Sec.*, 582 F. Supp. 3d 151, 163 (S.D.N.Y. 2022) (collecting cases); *Hernandez*, 2023 WL 4209622, at *3 ("While the Second Circuit has not directly addressed the impact of the

17

new regulations concerning treating [doctors], 'Tankisi suggests that the rule it sets out would remain unaffected.'") (quoting *Angelica M. v. Saul*, No. 3:20-cv-727(JCH), 2021 WL 2947679, at *6 (D. Conn. July 14, 2021)).  As *Tankisi* explained, a treating source opinion has value because it affords the doctor "the opportunity to *explicitly* assess the claimant's limitations and RFC."  *Angelica M.*, 2021 WL 2947679, at *6 (emphasis added).

Medical records alone cannot provide the substantial evidence necessary to make an RFC determination.  *Schmidt*, 2022 WL 1540054, at *4;  *see Adeyemi v. Comm'r of Soc. Sec.*, No. 1:20-cv-3386(MKB), 2022 WL 4134118, at *7 (E.D.N.Y. Sept. 12, 2022) (explaining that treatment notes ordinarily cannot adequately substitute for a treating doctor's opinion).  That is so even when the records are "voluminous."  *Fontanez v. Colvin*, No. 1:16-cv-1300(PKC), 2017 WL 4334127, at *25 (E.D.N.Y. Sept. 28, 2017).  Notes that simply describe the claimant's "symptoms and examinations" do not necessarily assess the claimant's work-related "functional capacity," the crux of an RFC determination.  *See Adeyemi*, 2022 WL 4134118, at *7 (finding a "evidentiary gap . . . warranting remand for further development" where treatment records "consist[ed] largely of summaries of the [p]laintiff's self-reported psychiatric history, session notes, and reports of how the [p]laintiff was feeling on the particular day he was seen").

18

A consultative examiner's opinion based on a single interaction with the claimant also often cannot adequately substitute for a treating doctor's opinion.  The Second Circuit has repeatedly cautioned ALJs not to "rely heavily on the findings of consultative physicians after a single examination." *Estrella v. Berryhill*, 925 F.3d 90, 98 (2d Cir. 2019) (quoting *Selian v. Astrue*, 708 F.3d 409, 419 (2d Cir. 2013)).  That caution applies with special force in mental health cases because "a one-time snapshot of a claimant's status may not be indicative of [his or] her longitudinal mental health."  *Id.*

Opinions of *non-examiners* who merely review the claimant's medical file cannot constitute substantial evidence, even where the treating source rule does not apply.  *See Fintz v. Kijakazi*, No. 1:22-cv-337(KAM), 2023 WL 2974132, at *6 (E.D.N.Y. Apr. 15, 2023).  Further, when the "disability at issue is a mental impairment, . . . 'it is improper to rely on the opinion of a non-treating, non-examining doctor because the inherent subjectivity of a psychiatric diagnosis requires the physician rendering the diagnosis to personally observe the patient.'" *Perry v. Comm'r of Soc. Sec.*, No. 1:18-cv-5517(PKC), 2020 WL 1550583, at *5 (E.D.N.Y. Mar. 31, 2020) (quoting *Velazquez v. Barnhart*, 518 F. Supp. 2d 520, 524 (W.D.N.Y. 2007)).

All this is to say that an ALJ who declines to even *obtain* a treating source opinion risks remand even if current

19

regulations would not require the ALJ to give that opinion controlling weight.  The Commissioner cites summary orders upholding RFC findings by ALJs who lacked treating source opinions, (*see* Opp'n 11–12), but those cases appear to have involved medical records with no clear gaps that otherwise contained enough evidence to permit informed findings, *see Cook v. Comm'r of Soc. Sec.*, 818 F. App'x 108, 109–10 (2d Cir. 2020) (summary order) (ALJ faced with no clear gap where "no other medical evidence . . . indicate[d] that [plaintiff] faced any limitations not reflected in the ALJ's RFC"); *Janes v. Berryhill*, 710 F. App'x 33 (2d Cir. 2018) (summary order) (ALJ who obtained eight years of treatment records did not have to obtain records for "the ten months preceding the ALJ's decision" where the record otherwise permitted the ALJ to make a finding); *Swiantek v. Comm'r of Soc. Sec.*, 588 F. App'x 82, 84 (2d Cir. 2015) (summary order) (ALJ based findings on "psychiatric evaluation of a consultative psychologist who personally examined [plaintiff] as well as [plaintiff's] complete medical history and treatment notes, which themselves contained multiple psychological assessments of [plaintiff]" and there were no "obvious gaps" in the record).  Though failure to procure a treating source opinion does not require remand as a matter of law, *Tankisi*'s "sufficient evidence" standard in practice often is not met when the record lacks a treating source opinion.

*Luz S. v. Kijakazi*, No. 3:20-cv-1573(JCH), 2022 WL 875690, at *4 (D. Conn. Mar. 24, 2022).

## II.  The ALJ's Failure to Develop the Record

Here, the ALJ determined Santoro's mental RFC based on an incomplete record.  The record lacks a single psychiatric functional assessment by an examining doctor.  There was no treating source opinion as to Santoro's physical *or* mental RFC. The consultative opinion involved only an assessment of Santoro's physical RFC and "defer[red] to Psychiatry" regarding her mental symptoms.  (*See* R.418-20.)  The only opinions in the record evaluating Santoro's mental RFC were the OTDA medical record reviews.  (*See* R.75, 80, 87-89.)  These opinions were written by doctors who never examined Santoro and were deemed only "somewhat persuasive" by the ALJ.  (*See* R.22.)

Lacking a medical opinion more than "somewhat persuasive," the ALJ could have ordered a psychiatric consultative examination, as Santoro's attorney suggested at the hearing. (*See* R.60-62.)[6]  Instead, the ALJ responded that she "[didn't]

---

[6] In response to this point, the Commissioner notes that Santoro's "attorney agreed that the record was complete."  (Opp'n 12.)  The attorney did say that he "[thought] the record [was] complete," but only in response to the ALJ's question whether there were "any outstanding *medical records* [she needed] to be aware of."  (*See* R.51 (emphasis added).)  Moreover, that statement came at the very beginning of the hearing before Santoro's testimony and before the attorney raised the lack of a psychiatric functional assessment.  Even putting aside that context, the attorney's statement means little.  An ALJ has an affirmative obligation to develop the record and cannot be relieved of that obligation "by a statement of counsel."  *Hilsdorf*, 724 F. Supp. 2d at 346.

think [she] need[ed] to based on what [she] reviewed" and that they would "not [be] doing that unless [it was] absolutely necessary," given the delays COVID-19 was causing at the time of the hearing.  (R.61–62.)  The ALJ elaborated that "[u]sually there's enough psychiatric records in here [that] they don't necessarily send her out for an exam."  (R.61.)

Thus, the ALJ's RFC finding was based almost entirely on Santoro's medical records and subjective testimony.  The ALJ did not appear to have assigned much weight to Santoro's testimony, however.  She acknowledged Santoro's "belie[f]" that she "cannot work because she gets overwhelmed" but found Santoro's "statements concerning the intensity, persistence[,] and limiting effects of [her] symptoms . . . not entirely consistent with the medical evidence and other evidence in the record." (R.22.)

That left the ALJ to render an RFC finding largely based on her interpretation of the raw medical file.  These records were voluminous, but as they pertained to Santoro's psychiatric health, they comprised only treatment notes describing Santoro's self-reported symptoms, session notes, prescribed medications, and reports of how Santoro felt the day she was seen.  (*See* R.19–21.)  No portion the ALJ cited contained a functional assessment.  The cited portions state, for example, that Santoro was in "partial remission," exhibited "ongoing stability," and

"responded well to treatment," (*see, e.g.*, R.23), but such
statements offer little insight into Santoro's ability to work
when made outside the context of a work-related functional
assessment, *see Hutsell v. Massanari*, 259 F.3d 707, 712
(8th Cir. 2001) ("[T]he Commissioner erroneously relied too
heavily on indications in the medical record that [claimant] was
'doing well,' because doing well for the purposes of a treatment
program has no necessary relation to a claimant's ability to
work or to [his or] her work-related functional capacity.").

Some courts have found that treatment notes "were medical
opinions" where the notes "did not merely list the symptoms
detailed by the Plaintiff [or] the tests performed by the
doctor" but rather "made judgments" about the "severity of [the
claimant's] conditions." *See Wider v. Colvin*, 245 F. Supp. 3d
381, 390–91 (E.D.N.Y. 2017). Such a conclusion might be
appropriate, for example, where a medical record includes a
"statement . . . concerning [the claimant's mental health]
diagnosis and its impact on [the claimant's] functioning." *See
Daniels ex rel. D.M.G. v. Comm'r of Soc. Sec.*,
No. 1:17-cv-1768(DF), 2018 WL 5019746, at *9 (S.D.N.Y. Sept. 30,
2018). It is inappropriate here, however, because the treatment
notes the ALJ relied on contain no functional analyses.

Compounding the problem, the lack of a functional
assessment gave the ALJ no way to determine to what degree

23

Santoro's mental impairments might leave her "off task" during the workday or how frequently they might force her to be absent from work. *See Faure v. Comm'r of Soc. Sec.*, No. 1:22-cv-1571(KHP), 2023 WL 5013282, at *11 (S.D.N.Y. Aug. 7, 2023) (remanding in part for this reason). The ALJ, however, concluded Santoro was not engaged in substantial gainful activity and had multiple severe mental impairments precluding her from performing her past work. (*See supra* pp. 10–12.) Given those conclusions, the denial of benefits hinged on the ALJ's finding that other work existed "in the national economy" that Santoro could perform with her RFC.

In making that finding, the ALJ relied on the vocational expert's testimony that Santoro could work as a laundry bagger, bakery racker, or lamp assembler. (R.24–25.) As the vocational expert testified, however, employers for such jobs would tolerate at most fifteen percent of "off-task behavior" and one day per month of absence. (R.66–67.) The ALJ's RFC finding included no information about Santoro's likely rates of off-task behavior and absence. Given Santoro's reported history of blackouts and panic attacks, that gap exacerbated the need for a medical opinion. *See Faure*, 2023 WL 5013282, at *11 (finding gaps in the record "particularly important" given plaintiff's "frequent black-outs and panic attacks"); *see also Sheldon v. Comm'r of Soc. Sec. Admin.*, No. 1:22-cv-3778(AMD), 2023 WL

24

5417245, at *6 (E.D.N.Y. Aug. 21, 2023) (remanding to develop record regarding claimant's rates of off-task behavior and absence given his RFC).

With no treating source opinion, no consultative psychiatric opinion, two "somewhat persuasive" non-examiner record reviews, subjective testimony assigned little value, and medical records containing no psychiatric functional assessment, the ALJ lacked "sufficient evidence from which an ALJ [could] assess" Santoro's mental RFC. *See Tankisi*, 521 F. App'x at 34. The ALJ's finding amounted to an improper "substitut[ion] [of the ALJ's] own opinion" for that of a doctor and thus a "legal error" requiring remand. *See Hilsdorf*, 724 F. Supp. 2d at 347; *see also Adeyemi*, 2022 WL 4134118, at *7 (remanding for failure to develop record where ALJ did not obtain psychiatric functional assessment from treating source and record similarly "largely consist[ed] of medical notes from [plaintiff's] visits with his providers and [did] not identify any functional assessments"); *Manago v. Kijakazi*, No. 1:20-cv-1251(MKB), 2021 WL 4408966, at *8 (E.D.N.Y. Sept. 26, 2021) ("The ALJ failed to develop the record because the ALJ did not seek functional assessments from Plaintiff's treating physicians when the record consisted of only medical notes and records."). Such errors pose special problems in mental health cases like this one because a treatment note, like a single-interaction

consultative examination, offers only "a one-time snapshot" that may provide little insight into the claimant's "longitudinal mental health." *See Estrella*, 925 F.3d at 98.

Finally, the ALJ's error was not harmless.  The current record contains enough evidence of Santoro's psychiatric conditions to suggest that more development could lead an ALJ to determine that those impairments are disabling. *See Walton v. Saul*, No. 1:18-cv-4306(DF), 2019 WL 13222734, at *23 (S.D.N.Y. Sept. 24, 2019).  Santoro suffered a panic attack in December 2018, serious enough to visit the emergency room.  (R.331-39.) By the next month, Santoro testified, her episodes reached the point where her boss told her not to return until she got medical clearance.  (R.55-56.)  She was diagnosed with major depressive disorder, anxiety, and post-traumatic stress disorder.  (R.379)  She visited multiple psychiatrists over the next several months to manage her symptoms.  (*See, e.g.*, R.385-86, 397-98, 404, 407, 757.)  This is simply not a record that so overwhelmingly supported a "not disabled" finding that the ALJ could forego an examining doctor's opinion.

The parties raise other disputes in their briefs, but the gap in the record leaves the Court unable to resolve them.  An ALJ's failure to develop the record is a threshold problem. *See Perez v. Comm'r of Soc. Sec.*, No. 1:22-cv-4545(PKC), 2023 WL 6308051, at *5 (E.D.N.Y. Sept. 28, 2023).  The Court cannot

determine whether the ALJ's RFC finding was supported by substantial evidence if that finding was made on an incomplete record.  *See id.*  If the Commissioner on remand develops the record with a psychiatric functional assessment and denies benefits again, the Court should be equipped to evaluate whether the ALJ supported his or her findings with substantial evidence.

On remand, the ALJ should further develop the record by seeking an opinion from an appropriate medical source regarding Santoro's work-related mental capacity.  The ALJ should address any such opinion in explaining his or her process for determining Santoro's mental RFC.

## CONCLUSION

For the reasons stated above, the Court grants Santoro's Motion for Judgment on the Pleadings insofar as she seeks remand, denies the Commissioner's Cross-Motion for Judgment on the Pleadings, and remands this case for further proceedings consistent with this Memorandum and Order.

The Clerk of Court is respectfully directed to enter judgment remanding this case, and to close this case.

**SO ORDERED.**

Dated:      November 27, 2023
            Brooklyn, New York

_____
KIYO A. MATSUMOTO
United States District Judge
Eastern District of New York

27